**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

MATTHEW MYERS,

                    Plaintiff,

v.                                                        CIVIL ACTION NO.   2:21-cv-00365

CITY OF CLENDENIN, et al.,

                    Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants Town of Clendenin, [1] Officer Pena, Officer Craddock, and Officer Kendall's (collectively "Defendants") Motion for Summary Judgment. (ECF No. 15.)   For the reasons stated more fully below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion.

*I.      BACKGROUND*

*A.   Factual Background*

This dispute arises out of the Defendant officers' use of force to detain Plaintiff Matthew Myers ("Plaintiff" or "Myers") during an incident in May of 2019.   On May 28, 2019, Myers received a call from his brother informing him that Officers Pena, Craddock, and Kendall had pulled him over during a traffic stop.   (ECF No. 16 at 2.)   Thereafter, Myers—as the apparent owner of the vehicle being operated by his brother—went to the scene of his brother's traffic stop

---

[1] Defendant Town of Clendenin notes that it was incorrectly named in Plaintiff's Complaint as "City of Clendenin." (ECF No. 16 at 1.)

and informed the Defendant officers that he did not consent to a search of the vehicle.   (*Id.*)   The Defendant officers told Myers to leave the area, with one of the officers allegedly using an expletive.   (*Id.*)   Myers then returned to his vehicle and began driving back to his residence. (*Id.*)

After Myers left the scene, the Defendant officers returned to their squad car and pursued him with their lights and sirens activated.   (*Id.*)   It is unclear what transpired after the Defendant officers instructed Myers to leave the scene and before he actually left.   However, Myers claims that the Defendant officers began pursuing him "because he allegedly sprayed gravel on their vehicles as he left."   (ECF No. 17 at 3.)   Myers maintains that "there is no evidence that this was intentional," and he was not criminally charged for such conduct.   (*Id.*)   On the other hand, Defendants maintain that Myers "attempted to interfere with, and obstruct, the traffic stop the officers were conducting on [Myers'] brother."   (ECF No. 16 at 8.)   Nevertheless, the parties do not dispute that Myers disobeyed the Defendant officers' attempts to conduct a traffic stop on him until he arrived at his residence.   (*Id.* at 3; ECF No. 17 at 2.)

As Myers was driving to his residence while being pursued by the Defendant officers, Myers called 9-1-1 and spoke with an operator because he allegedly "feared for his safety."   (ECF No. 16 at 2.)   Despite being actively pursued by the Defendant officers with their lights and sirens activated, Myers continued to drive to his residence until the 9-1-1 operator told him to pull over. (*Id.*)   At that time, Myers pulled into his residence and the Defendant officers pulled in behind him.   (*Id.*)

The Defendant officers told Myers to exit his vehicle, and upon doing so he was detained by the officers.   (*Id.*)   Myers alleges that, once detained, the officers pushed him against the

window of his vehicle and placed him in handcuffs.  (*Id.*)  Myers then alleges that the Defendant officers took him to the ground and beat him with physical blows to the body and head.  (*Id.*)

Myers alleges that he informed the Defendant officers while being processed that he suffered from a heart condition requiring medication and that he believed he may have suffered a minor heart attack during his arrest.  (*Id.*)  Myers alleges he was denied medical treatment by the Defendant officers, and was instead taken to a holding cell at the Clendenin Police Department.  (*Id.* 2–3.)  Myers was released the following morning, and was charged with obstructing an officer and fleeing.  (*Id.* at 3.)

Myers contends that he suffered severe physical injury as a result of the "aggressive and excessive force" used by the Defendant officers.  (ECF No. 1-1 at 7, ¶ 16.)  Myers also alleges that he suffered physical and mental damages from the Defendant officers' alleged refusal to provide him with medical treatment.  (*Id.* at 7, ¶ 17.)  Lastly, Myers states that he suffered emotional and mental trauma due to the incident, and now has an irrational fear of police officers. (*Id.* at 7, ¶ 18.)

B. *Procedural Background*

Based on the above allegations, Myers initiated this action against Defendants on May 28, 2021 in the Circuit Court of Kanawha County, West Virginia.  (ECF No. 16 at 1.)  Defendants removed this action to this Court on June 24, 2021.  (ECF No. 1.)  Myers alleges nine causes of action in his Complaint.  (ECF No. 1-1.)  Count I of Myers' Complaint alleges claims under Article III, Sections 6 and 10 of the West Virginia Constitution against the Defendant officers. (*Id.* at 7–8, ¶¶ 19–23.)  Count II alleges claims under Article III, Sections 1, 5, 10, and 14 of the West Virginia Constitution against the Town of Clendenin.  (*Id.* at 8–9, ¶¶ 24–28.)  Count III

alleges a state law negligent hiring, retention, and supervision claim against the Town of Clendenin.  (*Id.* at 9, ¶¶ 29–33.)   Count IV alleges a "punitive damages" claim against all Defendants.  (*Id.* at 10, ¶¶ 34–38.)   Count V alleges a state law battery claim against the Defendant officers.  (*Id.* at 10–11, ¶¶ 39–43.)   Count VI alleges a state law intentional infliction of emotional distress claim against all Defendants.  (*Id.* at 11–12, ¶¶ 44–48.)   Count VII alleges an excessive force claim under 42 U.S.C. § 1983 ("Section 1983") against the Defendant officers.  (*Id.* at 12, ¶¶ 49–51.)   Count VIII alleges a claim for "unlawful seizure of a person" under Section 1983 against the Defendant officers.  (*Id.* at 13, ¶¶ 52–55.)   Finally, Count IX alleges a *Monell* claim against the Town of Clendenin under Section 1983.  (*Id.* at 13–14, ¶¶ 56–62.)

Defendants filed their Motion for Summary Judgment on January 10, 2022.  (ECF No. 15.)   Myers timely filed a Response to Defendants' Motion on January 24, 2022.  (ECF No. 17.) Defendants timely replied on January 31, 2022.  (ECF No. 18.)   Accordingly, Defendants' Motion for Summary Judgment has been fully briefed and is now ripe for adjudication.

## II.   *LEGAL STANDARD*

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. This rule provides, in relevant part, that summary judgment should be granted if "there is no genuine issue as to any material fact."   Summary judgment is inappropriate, however, if there exist factual issues that reasonably may be resolved in favor of either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).   "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party."  *News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).   When evaluating such factual issues, the Court must

view the evidence "in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). Once the moving party has met its burden, the burden shifts to the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If a party fails to make a sufficient showing on one element of that party's case, the failure of proof "necessarily renders all other facts immaterial." *Id.* at 323.

"[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 256. "The mere existence of a scintilla of evidence" in support of the nonmoving party is not enough to withstand summary judgment; the judge must ask whether "the jury could reasonably find for the plaintiff." *Id.* at 252.

### III. DISCUSSION

Defendants move this Court to grant summary judgment in their favor on each of the nine counts alleged in Plaintiff's Complaint. (ECF No. 16.) The Court will examine Myers' federal Section 1983 claims before assessing his state law claims.

#### A. Section 1983 Claims

Myers has alleged three claims under Section 1983 in his Complaint. First, Count VII asserts an excessive force claim against the Defendant officers, alleging that the force they

employed to detain and arrest Myers was violative of "the Fourth and Fourteenth Amendments to the United States Constitution and its counterparts in the West Virginia Constitution."   (ECF No. 1-1 at 12, ¶ 51.)   Second, Count VIII asserts a claim for "unlawful seizure of a person" against the Defendant officers, alleging that they "forcibly took Plaintiff to the ground and arrested him with no probable cause that [Myers] had committed a crime."   (*Id.* at 13, ¶ 53.)   Finally, Count IX asserts *Monell* claims against the Town of Clendenin.[2]   (*Id.* at 13–14, ¶¶ 56–62.)

Defendants move for summary judgment as to Counts VII and VIII, arguing that they are entitled to qualified immunity because they did not violate any of Myers' clearly established constitutional rights.   In this regard, the Defendant officers contend that their conduct in detaining and arresting Myers was "objectively reasonable" under the factors articulated by the United States Supreme Court in *Graham v. Connor*, 490 U.S. 386 (1989) and did not violate Myers' Fourth Amendment rights.   (ECF No. 16 at 4–8.)

Section 1983 is not itself the source of any substantive rights.   Rather, it provides a "method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."   *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).   Section 1983 provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law."

42 U.S.C. § 1983.   Thus, a plaintiff's claim under Section 1983 must meet two essential elements: (1) it must allege the violation of a right secured by the Constitution and laws of the United States;

---

[2] In his Response to Defendants' Motion for Summary Judgment, Plaintiff "agrees to dismiss the *Monell* claims against all Defendants."   (ECF No. 17 at 6.)   Accordingly, the Court need not discuss Count IX of the Complaint.

and (2) it must show that the alleged deprivation was committed by a "person" acting under color of state law. *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). Therefore, to overcome qualified immunity a plaintiff must plead facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). District courts have discretion to decide which of the two prongs of qualified immunity analysis to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). However, "[i]f no constitutional right would have been violated, even when the facts are viewed in the best light for the injured plaintiff, the analysis ends; the plaintiff cannot prevail." *Jones v. Buchanan*, 325 F.3d 520, 526 (4th Cir. 2003) (internal quotations omitted).

### 1. Excessive Force

Myers alleges that the Defendant officers' use of force in detaining and arresting him violated his rights under the Fourth and Fourteenth Amendments.[3] (ECF No. 1-1 at 12, ¶¶ 49–

---

[3] The United States Supreme Court has held that, if a constitutional claim is covered by a specific constitutional provision—in this case, the Fourth Amendment—the claim must be analyzed under the standard applicable to that specific provision rather than "under the rubric of substantive due process" under the Fourteenth Amendment. *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997). "It is well established in this district that 'claims of excessive force are more appropriately analyzed under the more textually specific Fourth Amendment . . . than the more generalized due process clause.'" *Meade v. Mynes*, Civil Action No.: 2:19-cv-00647, 2020 WL 3697974, at *3 (S.D. W. Va. July 6, 2020) (quoting *Krein v. W. Va. State Police*, Civil Action No.: 2:11-cv-00962, 2012 WL 2470015, at *6 n.6 (S.D. W. Va. June 27, 2012)). Here, because Myers' constitutional claims are governed by the Fourth Amendment, his claims under the Fourteenth Amendment cannot stand. Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment with regard to Myers' Fourteenth Amendment claim alleged in Count VII.

51.)   "The Fourth Amendment protects the people against unreasonable seizures—i.e., as applicable in this case—against officers' use of excessive force in effecting a seizure." *Redding v. Boulware*, 501 F. App'x 238, 242 (4th Cir. 2012) (citations omitted).   When evaluating a claim for excessive force, the Court must consider whether the police officer's actions were "'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." *Graham*, 490 U.S. at 397.   Therefore, the question is whether an objectively reasonable officer under the same circumstances would have concluded that a threat existed to justify the particular use of force. *Anderson v. Russell*, 247 F.3d 125, 129 (4th Cir. 2001) (citing *Graham*, 490 U.S. at 397).

Factors to be considered include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.   "The extent of the plaintiff's injuries is also a relevant consideration." *Turmon v. Jordan*, 405 F.3d 202, 207 (4th Cir. 2005); *see also Jones*, 325 F.3d at 527.   Ultimately, however, the Court "must decide 'whether the totality of the circumstances justifie[d] a particular sort of . . . seizure." *Hupp v. Cook*, 931 F.3d 307, 322 (4th Cir. 2019) (quoting *Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015)).

Here, Myers alleges that the Defendant officers used excessive force during his arrest by pushing him against the window of his vehicle, handcuffing him, forcibly taking him to the ground, and beating him with physical blows to the body and head.   (ECF No. 1-1 at 6, ¶ 13.)   Myers also alleges that the Defendant officers used excessive force by refusing to provide him with medical treatment for a cardiac condition he alleges may have caused a minor heart attack during his arrest,

despite informing the Defendant officers of this condition and his belief that he suffered a minor heart attack.   (*Id.* at 6, ¶ 14.)

Upon review of the factual circumstances surrounding Myers' arrest with the relevant *Graham* factors in mind, the Defendant officers' conduct in detaining and arresting Myers was objectively reasonable and did not violate Myers' Fourth Amendment rights.   The first *Graham* factor—"the severity of the crime at issue"—weighs in Myers' favor.   Myers contends that "the severity of the misdemeanor of obstruction is light."   (ECF No. 17 at 3) (citing *Hupp v. Cook*, 931 F.3d 307, 322 (4th Cir. 2019) ("[T]he severity of the crime for which [the plaintiff] was arrested is slight: obstruction is a misdemeanor.")).   Indeed, Myers was charged with obstructing an officer, fleeing from an officer, making false statements to an officer, and interfering with emergency communications, each of which are misdemeanors under West Virginia law.   *See* W. Va. Code § 61-5-17(a), (c), (e).   The Fourth Circuit has instructed that when the offense is a "minor one," such as a misdemeanor, the first *Graham* factor weighs in the plaintiff's favor.   *See Hupp*, 931 F.3d at 322 (citing *Jones*, 325 F.3d at 528).   Therefore, because each of the misdemeanor offenses Myers was arrested for were "minor offenses," the first *Graham* factor weighs in Myers' favor.

The second *Graham* factor—"whether the suspect poses an immediate threat to the safety of the officers or others"—weighs in the Defendant officers' favor.   The relevant inquiry is "whether 'a reasonable officer' could have perceived that [the plaintiff] 'pose[d] an immediate threat to the safety of the officers or others.'"   *Jones*, 325 F.3d at 529 (citing *Graham*, 490 U.S. at 396).   The Defendant officers maintain that Myers posed an immediate threat to the officers and others due to his attempts to evade the police.   (ECF No. 16 at 6.)   Plaintiff, on the other

9

hand, argues that he was not "fleeing" from the Defendant officers, but was instructed by them to get back into his vehicle and leave the scene of his brother's traffic stop.   (ECF No. 17at 3.)

Although Myers may have felt that he was merely following the Defendant officers' direction that he leave the scene of his brother's traffic stop, this point ignores the undisputed fact that from the time he left the scene until he arrived at his residence, Myers continually, and knowingly, disobeyed the Defendant officers' commands that he pull his vehicle over.   Under these circumstances an objectively reasonable officer would have perceived Myers' failure to pull over and continual ignorance of their lights and sirens as an active resistance of arrest or an attempt to evade arrest by flight.   Once Myers arrived at his residence, an objectively reasonable officer would have perceived that Myers—who, until this moment, had evaded the Defendant officers' attempts to pull him over—posed an immediate threat warranting detention and arrest.   Therefore, the second *Graham* factor weighs in Defendants' favor.

These factual circumstances also tip the third *Graham* factor—"whether Myers was actively resisting arrest or attempting to evade arrest by flight"—in Defendants' favor.   As noted above, Myers continually, and knowingly, ignored the Defendant officers' commands that he pull over his vehicle, instead choosing to continue driving to his residence.   A reasonable officer would perceive such actions as actively resisting arrest or attempting to evade arrest by flight. Therefore, the third *Graham* factor weighs in Defendants' favor.

Finally, the Court must consider the extent of the Myers' injuries in determining whether the totality of the circumstances justified the particular force used by the Defendant officers in this case.   Defendants have offered two expert opinions regarding the extent of the alleged injuries

Myers suffered during the disputed incident.  These experts were retained by Defendants to examine Myers and to review the medical records that were produced by Myers pre-suit.

First, Defendants have offered the opinion of Dr. Steven Cody, a licensed psychologist who performed an independent psychological examination of Myers.  (ECF No. 15-2.)  Dr. Cody concluded that "[t]he results of [Myers'] evaluation . . . provide[d] no basis for concluding, with a reasonable degree of professional certainty, that [Myers] experienced any adverse effects from the subject incident. . . ."  (ECF No. 16 at 6.)  Rather, Dr. Cody found "a mixture of unlikely problems that [were] not consistent with genuine traumatic brain injury or post-concussion syndrome; problems that pre-date[d] the alleged subject incident; complaints that [were] not corroborated by available records; and evidence of exaggeration and embellishment."  (*Id.* at 6–7.)

Second, Defendants have offered the opinion of Dr. Bruce Guberman, a licensed physician board certified in cardiovascular disease.  (ECF No. 15-3.)  Regarding Myers' allegations that he suffered cardiac injury during the disputed incident, Dr. Guberman concluded the following:

> After a review of [Myers'] medical records, there is no evidence of any cardiac complaints, cardiac symptoms, cardiac injury, or concern for cardiac injury in any of the records, either in the emergency room at CAMC or at the jail.  There is no evidence that [Myers] had any cardiac injury or heart attack.  Further, there is no evidence that any of the medical providers suspected any type of cardiac injury or acute events since none were mentioned, and no specific cardiac evaluation was obtained.

(ECF No. 16 at 7.)

Conversely, Myers has not submitted *any* medical evidence regarding the extent of his alleged injuries, not even a sworn affidavit describing the extent of the injuries alleged.  Rather, Myers nonsensically argues that neither of Defendants' experts concluded that he was "not

11

injured."  (ECF No. 17 at 3.)   In this respect, rather than rebutting or disputing Dr. Cody's expert opinion, Myers contends that Dr. Cody's conclusion does not equate to a finding with a reasonable degree of professional certainty that Myers did not suffer any adverse effects from the incident. This argument is utterly futile and is, as Defendants suggest, a tired attempt to strain Dr. Cody's ultimate conclusion—that there was insufficient evidence to provide a basis to conclude that Myers suffered any adverse effects from his incident with the Defendant officers.

Similarly, Myers also argues that "Dr. Guberman's report made no finding at all with a reasonable degree of professional certainty."  (ECF No. 17 at 4.)   Again, such an argument is completely without merit.  The "reasonable degree of professional certainty" standard is only applicable to expert opinions as to future damages under West Virginia law.  In federal court, Federal Rule of Evidence 702 provides the standard for admissibility of expert opinion. "Nowhere in that Rule nor any other rule of evidence, nor any Supreme Court decision on expert testimony, is a particular degree of certitude required for admission of expert testimony." *Edwards v. McElliots Trucking, LLC*, Civil Action No.: 3:16-cv-01879, 2017 WL 3611848 (S.D. W. Va. Aug. 22, 2017).

At this stage of the proceedings, it is incumbent on a party opposing a properly supported motion for summary judgment to "set forth specific facts showing that there is a genuine issue for trial."  *Liberty Lobby*, 477 U.S. at 256.   Myers cannot make this showing simply by "rest[ing] upon mere allegations or denials of his pleading."  *Id.*   Indeed, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party is not enough to withstand summary judgment; the judge must ask whether "the jury could reasonably find for the plaintiff."  *Id.* at 252.   Given the expert opinions proffered by Defendants, as well as the utter lack of medical evidence produced

by Myers, no reasonable jury could find for Myers with regard to the extent of the injuries he allegedly suffered.   Therefore, this final factor weighs in Defendants' favor.

The relative force used by the Defendant officers—non-lethal, physical force—to detain Myers was justified under the totality of the circumstances presented to them.   A reasonable officer in the Defendant officers' positions would have used an appropriate amount of non-lethal, physical force to detain and arrest an individual who had continually, and knowingly, disobeyed the officer's commands that he pull his vehicle over.   Moreover, the unrebutted medical evidence presented by Defendants suggests that the extent of Myers' injuries was minimal.[4]   Because an objectively reasonable officer under the same circumstances would have concluded that a threat existed to justify the particular use of force used by the Defendant officers, no violation of Myers' Fourth Amendment rights occurred and the Defendant officers are entitled to qualified immunity from his Count VII Section 1983 excessive force claim.   Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment with regard to Count VII.

2.   <u>Unlawful Seizure</u>

Defendants also move for summary judgment as to Count VIII of Myers' Complaint, which alleges that the Defendant officers arrested him "with no probable cause that Plaintiff had committed a crime."   (ECF No. 1-1 at 13, ¶ 53.)   Myers contends that "it is not clear that the officers even had probable cause to arrest [him] at all."   (ECF No. 17 at 3.)

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."   U.S. Const. amend IV.

---

[4] For clarity, it should be noted that while Myers *alleges* that he was beaten by the officers, there is no evidence in the record that a beating occurred.   As explained above, in a summary judgment context, allegations without evidence are useless.

"The basic purpose of this Amendment . . . is to safeguard the privacy and security of individuals against arbitrary invasions by government officials." *Camara v. Mun. Ct. of City and Cnty. of San Fransisco*, 387 U.S. 523, 528 (1967).   Fundamentally, the Fourth Amendment imposes "a standard of reasonableness upon the exercise of discretion by government officials, including law enforcement agents. . . ." *Delaware v. Prouse*, 440 U.S. 648, 653–54 (1979).   An arrest is a form of seizure under the Fourth Amendment.   As such, it is only considered "reasonable" for purposes of the Fourth Amendment when justified by probable cause.   *See, e.g.*, *Wilson v. Kittoe*, 337 F.3d 392, 398 (4th Cir. 2003).   While a warrant will generally provide evidence of such probable cause, a police officer's authority to make warrantless arrests based on probable cause is well-established. *See Atwater v. Lago Vista*, 532 U.S. 318, 354 (2001) ("[T]he standard of probable cause applies to all arrests. . . . If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.").

In order to state a claim under Section 1983 for an unconstitutional warrantless arrest, a plaintiff must show that the arrest was made without probable cause.   "Probable cause to justify an arrest arises when 'facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Porterfield v. Lott*, 156 F.3d 563, 569 (4th Cir. 1998) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). The probable cause determination is inherently fact specific, but typically turns on two primary factors: (1) the suspect's conduct known to the officer, and (2) the contours of the offense thought to be committed by that conduct.   *Rogers v. Pendleton*, 249 F.3d 279, 290 (4th Cir. 2001);

*Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992).   Where "no reasonable officer could believe, in light of the contours of the offense at issue, that probable cause exists to arrest that person, a violation of a clearly established Fourth Amendment right . . . ensues." *Rogers*, 249 F.3d at 290 (citing *Smith v. Reddy*, 101 F.3d 351, 356 (4th Cir. 1996)).   Probable cause "requires more than bare suspicion but requires less than evidence necessary to convict." *Porterfield*, 156 F.3d at 569.

Myers alleges that the Defendant officers "forcibly took [him] to the ground and arrested him with no probable cause that Plaintiff had committed a crime."  (ECF No. 1-1 at 13, ¶ 53.) This conduct, Myers avers, was "objectively unreasonable, excessive, unwarranted, and in violation of [his] clearly established right to remain on the premises without being seized unless a reasonable suspicion and/or probable cause that a crime ha[d] been committed exist[ed]."  (*Id.* at 13, ¶ 54.)   However, Myers also concedes that he was charged with "obstructing and fleeing in a motor vehicle."  (ECF No. 16 at 2.)   Myers also does not dispute that he attempted to interfere with, and obstruct, the traffic stop the Defendant officers were conducting on his brother; and that he continually, and knowingly, refused to pull over his vehicle when the Defendant officers attempted to perform a traffic stop on him.

Although these offenses may be minor, as Myers suggests, there is no doubt that Myers committed these minor offenses in plain view of the Defendant officers.   The severity of an offense is immaterial with respect to the Court's probable cause analysis.   *See Atwater*, 532 U.S. at 354 ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.").   What is relevant is whether the Defendant officers had probable cause to suspect

that Myers had committed an offense, however slight.   Here, it is undisputed that Myers committed the offenses of obstruction and fleeing in a motor vehicle in plain view of the Defendant officers.

Therefore, because the Defendant officers had probable cause, based upon their personal observations, to believe that Myers had committed an offense, Myers' arrest did not violate his Fourth Amendment rights.   As such, the Defendant officers are entitled to qualified immunity with regard to the Section 1983 claim alleged in Count VIII of Myers' Complaint.   Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Count VIII of Myers' Complaint.

### B.   State Law Claims

Having weighed Myers' federal Section 1983 claims, the Court now proceeds to analyze Myers' remaining state law claims.   Myers has alleged six state law claims against Defendants: (1) violations of Article III, Sections 6[5] and 10 of the West Virginia Constitution; (2) violations of Article III, Sections 1, 5, 10, and 14 of the West Virginia Constitution by the Town of Clendenin;[6] (3) negligent hiring, retention, and/or supervision by the Town of Clendenin; (4) a

---

[5] Myers concedes that the West Virginia Supreme Court of Appeals' ("WVSCA") decision in *Fields v. Mellinger*, 851 S.E.2d 289 (W. Va. 2020) is dispositive with regard to his claims brought under Article III, Section 6 of the West Virginia Constitution.   In that case, the WVSCA responded to this Court's certified question and held that "West Virginia does not recognize a private right of action for monetary damages for a violation of Article III § 6 of the West Virginia Constitution."   Syl. Pt. 3, *Fields*, 851 S.E.2d 789.   Accordingly, the Court **GRANTS IN PART** Defendants' Motion for Summary Judgment as to Count I of Myers' Complaint to the extent it alleges a claim under Article III, Section 6 of the West Virginia Constitution.

[6] Myers also concedes that claims brought under Article III, Sections 1, 5, and 14 are no longer viable under West Virginia law.   To be sure, this Court has previously held that Article III, Section 1 does not create a cause of action. *Spry v. West Virginia*, Civil Action No.: 2:16-cv-01785, 2017 WL 440733, at *10 (S.D. W. Va. Feb. 1, 2017). Further, the WVSCA has held that Article III, Section 5 only permits injunctive relief.   *Harrah v. Leverette*, 271 S.E.2d 322, (W. Va. 1980).   Lastly, claims for monetary damages have never been recognized, either by the common law or by statute, under Article III, Section 14.   Accordingly, the Court **GRANTS IN PART** Defendants' Motion for Summary Judgment as to Count II of Myers' Complaint to the extent it alleges claims under Article III, Sections, 1, 5, and 14 of the West Virginia Constitution.

claim for punitive damages; (5) battery against the Defendant officers; and (6) intentional infliction of emotional distress (or, the tort of outrage) against the Defendant officers.   (ECF No. 1-1 at 7–11.)

      1.   <u>State Law Qualified Immunity—Individual Defendants</u>

With regard to Myers' state law claims of battery and intentional infliction of emotional distress against the Defendant officers alleged in Counts V and VI, the Defendant officers argue they are entitled to state law qualified immunity.   (ECF No. 16 at 9.)   The West Virginia Governmental Tort Claims and Insurance Reform Act (the "Tort Claims Act") provides that employees of political subdivisions are immune from liability unless one of the following three exceptions applies:

> (1) [the employee's] acts or omissions were manifestly outside the scope of employment or official responsibilities;
>
> (2) [the employee's] acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or
>
> (3) [l]iability is expressly imposed upon the employee by a provision of this code.

W. Va. Code § 29-12A-5(b).

Myers does not dispute that the Defendant officers' were acting within the scope of their employment when they detained and arrested him.   Rather, Myers contends that the Defendant officers acted maliciously and in bad faith, and are therefore excluded from immunity under the Tort Claims Act.   (ECF No. 17 at 4–5.)   However, as Defendants note, Myers has presented no evidence supporting his barebone allegations that the Defendant officers acted maliciously or in bad faith.

Myers argues that the Defendant officers' conduct in executing his arrest was "clearly done with malicious purpose and in bad faith."   (ECF No. 17 at 5.)   However, Myers points to no evidence, aside from the injuries he suffered, to demonstrate that the Defendant officers acted with malicious purpose and in bad faith.   As previously stated, at this juncture Myers "must set forth specific facts showing that there is a genuine issue for trial."   *Liberty Lobby*, 477 U.S. at 256.   He "may not rest upon mere allegations or denials of his pleading," as he has done here.   Therefore, because no genuine issue of material fact exists with respect to whether the Defendant officers acted maliciously or in bad faith, the Defendant officers are entitled to qualified immunity pursuant to W. Va. Code 29-12A-5(b) from Myers' state law battery and intentional infliction of emotional distress claims in Counts V and VI of his Complaint.   Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Counts V and VI of Myers' Complaint.

2.   <u>Negligent Hiring, Retention, and Supervision—Town of Clendenin</u>

Defendants also move for summary judgment as to Myers' negligent hiring, retention, and supervision claims against the Town of Clendenin alleged in Count III of his Complaint.   With regard to Myers' claims of negligent hiring and retention, Defendants argue that Myers has failed to present any evidence that there were any complaints against the Defendant officers, either before or during their employment with the Town of Clendenin, that there were no problems in the Defendant officers' backgrounds that an investigation would have revealed, or that there were any prior incidents that would have placed the Town of Clendenin on notice of an increased risk to the public.   (ECF No. 16 at 15.)

18

West Virginia recognizes a cause of action for negligent hiring.   *See State ex rel. W. Va. State Police v. Taylor*, 499 S.E.2d 283, 289 n.7 (W. Va. 1997).   When a claim for negligent hiring is alleged, courts must ask

> When an employee was hired, did the employer conduct a reasonable investigation into the employee's background vis a vis the job for which the employee was hired and the possible risk of harm or injury to co-workers or third parties that could result from the conduct of an unfit employee?   Should the employer have reasonably foreseen the risk caused by hiring an unfit person?

*McCormick v. W. Va. Dep't of Pub. Safety*, 503 S.E.2d 502, 506 (W. Va. 1998) (quoting *Taylor*, 499 S.E.2d at 289 n.7).

Here, Myers has offered no evidence that the Town of Clendenin failed to conduct a reasonable investigation into the Defendant officers' backgrounds prior to hiring them as police officers.   Myers also has not presented any evidence that the Town of Clendenin failed to properly investigate the possible risk of harm or injury to others that could result from the Defendant officers' conduct.   Simply put, Myers has presented no evidence that the Town of Clendenin should have reasonably foreseen any risk caused by hiring the Defendant officers.   Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment with respect to Myers' claim for negligent hiring and retention alleged in Count III of his Complaint.

With regard to Myers' negligent supervision claim, Defendants argue that Myers has failed to present evidence of a lack of supervision of the Defendant officers.   (*Id.* at 15–16.)   "To state a claim for negligent supervision under West Virginia law, a plaintiff must show that an employer 'failed to properly supervise' an employee and, as a result, the employee 'proximately caused injury to' the plaintiff."   *Lester v. City of Gilbert*, 85 F. Supp. 3d 851, 865 (S.D. W. Va. 2015) (quoting *Woods v. Town of Danville*, 712 F. Supp. 2d 502, 514 (S.D. W. Va. 2010)).

19

Myers maintains that his negligent supervision claim survives because "even a cursory reading of the Defendants' response to [his] discovery requests shows there are glaring holes in the upkeep and supervision of the Officers of the Clendenin Police Department."   (ECF No. 17 at 6.)   First, Myers cites to the Town of Clendenin's answer to an interrogatory admitting that there was no use of force policy in place at the time of Myers' arrest.   (*Id.*)   Citing no legal authority, Myers argues that this admission necessarily "means that the [Defendant] officers had no guidance on the use of force from the Town of Clendenin during" Myers' arrest.   (*Id.*)   However, Myers has presented no evidentiary support that the Defendant officers' use of force against him resulted from any apparent lack of policy implemented by the Town of Clendenin.   Additionally, the Town of Clendenin's response to this interrogatory indicates that the Defendant officers did receive training and guidance regarding the use of force in the field.[7]

Second, Myers cites to the Town of Clendenin's admission that it had no use of force report form for its officers to use, and contends—again, citing no legal authority—that this admission necessarily means that the Town of Clendenin failed to supervise the Defendant officers.   (*Id.*) However, the lack of a use of force report form for the Defendant officers to use following the incident with Myers is insufficient to demonstrate that the Defendant officers injured Myers as a

---

[7] When asked to "set forth [its] use of force policy and provide any and all written (and/or electronic) documents, reports, handbooks, manuals regarding the same," the Town of Clendenin answered, in relevant part, as follows:

> [T]his Defendant states that its use of force policy in effect at the time of Plaintiff's arrest on May 28, 2019 would have included the following directives, as adopted pursuant to the West Virginia State Police academy training: that any force used by any law enforcement officer of the Town of Clendenin be objectively reasonable and necessary according to the circumstances facing the officer at the time; that the force used be proportionate to the circumstances involved; that deadly force only be used as a last resort; that officers promptly provide or request medical aid if the same appears necessary according to the circumstances involved; and that officers stop and report any use of force that appears to violate any applicable law or the Town of Clendenin's use of force policy.   No written policy was in effect at the time applicable to this civil action.

(ECF No. 15-4 at 1–2.)

result of any failure on the part of the Town of Clendenin to supervise them.  *See Tomashek v. Raleigh Cty. Emergency Operating Ctr.*, 344 F. Supp. 3d 869, 878 (S.D. W. Va. 2018) (finding that the plaintiff could not produce any evidence that his injuries occurred as a result of the lack of a report, considering that the alleged failure to report the incident occurred *after* the altercation).

Moreover, Myers' position misconstrues the Town of Clendenin's response to this interrogatory.   The Town of Clendenin did not, as Myers suggests, "admit that it does not have a use of force report form for its [o]fficers to use."   (ECF No. 17 at 6.)   Rather, it stated its policy that "any situation that could be considered to have included the use of force be reported to the Town's Chief of police, who would then determine, on a case by case basis, if the force involved required completion of a use of force report or further investigation."   (ECF No. 15-4 at 2.)   Such an answer is hardly an admission by the Town of Clendenin that it completely lacks a use of force report form, but instead illustrates the procedure it utilizes to determine whether a use of force report is required to be submitted.

Third, Myers oddly argues that the Town of Clendenin failed to supervise the Defendant officers because it does not know Officer Craddock's badge number.   (ECF No. 17 at 6.)   However, the Town of Clendenin's failure to keep a record of Officer Craddock's badge number bears absolutely no relation as to whether the Town of Clendenin failed to adequately supervise the Defendant officers prior to and during the incident with Myers, and whether that failure to supervise resulted in the Defendant officers injuring Myers.

Finally, Myers argues that the Town of Clendenin failed to properly supervise the Defendant officers because it has not conducted an internal investigation after the instant action was initiated to assess the claims levied against the Defendant officers in his Complaint.   (*Id.* at

21

7.)  Again, the Town of Clendenin's failure to review the incident involving Myers, *after the incident has already occurred*, is insufficient to show that the Defendant officers were negligently supervised prior to and during the incident.

These allegations are undoubtedly insufficient to create a genuine issue of material fact with regard to Myers' negligent supervision claim.   Myers must offer sufficient evidence creating a triable issue of fact as to whether the Town of Clendenin failed to properly supervise the Defendant officers, which he has failed to do.   Myers has pointed to no concrete evidence demonstrating a failure to supervise the Defendant officers on the part of the Town of Clendenin. Nor has he directed the Court to any legal authority supporting his contention that these allegations are sufficient to create triable issues of fact as to whether the Town of Clendenin negligently supervised the Defendant officers.   Rather—as explained above—his allegations of a lack of a use of force policy, a lack of a use of force report form, a failure to keep record of Officer Craddock's badge number, and a failure to investigate the Defendant officers' conduct *after* the commencement of this lawsuit are wholly insufficient.

Nevertheless, Myers must also offer sufficient evidence creating a triable issue of fact as to whether the Defendant officers proximately caused him injury as a result of that failed supervision.   However, Myers has failed to offer sufficient evidence—if any—demonstrating that the Town of Clendenin's supervision of the Defendant officers—or the lack thereof—resulted in the Defendant officers committing any wrongdoing.   As explained above with regard to Myers' Section 1983 excessive force claim, the Defendant officers' apparent use of force to effectuate Myers' arrest was reasonable under the circumstances.   Accordingly, the Court **GRANTS**

22

Defendants' Motion for Summary Judgment with respect to Myers' claim for negligent supervision against the Town of Clendenin alleged in Count III of his Complaint.

       3.  <u>Myers' Claims Under Article III, Section 10 of the West Virginia Constitution</u>

Defendants also move for summary judgment with respect to Myers' claims under the West Virginia Constitution alleged in Counts I and II of his Complaint.  (ECF No. 16 at 10, 16.)  As noted above, Myers has conceded that claims for monetary damages under Article III, Sections 1, 5, 6, and 14 are unavailable.  (ECF No. 17 at 5, 7.)  This leaves Myers' claims under Article III, Section 10 of the West Virginia Constitution.

Defendants argue that Myers' claims under Article III, Section 10 should fail because a specific constitutional provision governs—in this case, the Fourth Amendment to the United States Constitution—and an analysis under the general rubric of substantive due process is inappropriate. (ECF No. 16 at 10.)  As Myers points out, however, this Court issued a certified question to the West Virginia Supreme Court of Appeals ("WVSCA") in *Cottrell on behalf of Estate of Cottrell v. Stepp*, Civil Action No.: 2:18-cv-01281, 2021 WL 1966830 (S.D. W. Va. May 17, 2021) to determine (1) whether West Virginia law "requires a constitutional claim that is covered by a specific constitutional provision to be analyzed under the standard specific to that provision and not under substantive due process," and (2) if so, whether "a claim brought under Article III, Section 10 of the West Virginia Constitution [is] considered redundant where Plaintiffs also alleged an Article III, Section 6 claim but are no longer allowed to pursue Article III, Section 6 as an avenue for relief."

As of the date of this Memorandum Opinion and Order, the WVSCA has yet to render a decision on this certified question.  Accordingly, the Court **DENIES IN PART** Defendants'

Motion for Summary Judgment to the extent it seeks summary judgment with regard to Myers' claims under Article III, Section 10 of the West Virginia Constitution alleged in Counts I and II of his Complaint.

### C. Count IV Punitive Damages Claim

Finally, Defendants move for summary judgment with regard to Myers' claim for punitive damages alleged in Count IV of his Complaint.   (ECF No. 16 at 18–19.)   Plaintiff argues that his claim for punitive damages survives because his claim for excessive force has merit.   (ECF No. 17 at 8.)   However, "West Virginia law does not recognize an independent cause of action for punitive damages."   *Miller v. Carelink Health Plans, Inc.*, 82 F. Supp. 2d 574, 579 n.6 (S.D. W. Va. 2000) (citing *Cook v. Heck's, Inc.*, 342 S.E.2d 453, 461 n.3 (1986)).   Rather, punitive damages are, of course, a form of relief.   *Id.*   Accordingly, this Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's Punitive Damages claim alleged in Count IV, but reserves judgment on Plaintiff's entitlement to punitive damages as a remedy until trial.

### IV.   CONCLUSION

For the reasons explained more fully above, the Court **GRANTS IN PART** Defendants' Motion for Summary Judgment, (ECF No. 15), with regard to Counts III, IV, V, VI, VII, VIII, and IX of Plaintiff's Complaint.   Further, the Court **GRANTS IN PART** Defendants' Motion with regard to Counts I and II of Plaintiff's Complaint to the extent they allege claims under Article III, Sections 1, 5, 6, and 14 of the West Virginia Constitution.   The Court **DENIES IN PART** Defendants' Motion with regard to Counts I and II of Plaintiff's Complaint to the extent they allege claims under Article III, Section 10 of the West Virginia Constitution.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        April 25, 2022

_____

THOMAS E. JOHNSTON, CHIEF JUDGE

25